GEORGE J. McDUFFIE v. MATTHEW R. BENTLEY.

[FILED SEPTEMBER 17, 1889.]

1. **Pleading.** In an action by M. against B., the petition alleged that defendant sold and endorsed, without recourse, to plaintiff a promissory note, past due, secured by mortgage on land and chattels; that upon suit to collect said note, the makers answered, proving that, except as to an insignificant portion of the consideration, the note was given for usurious interest in which the plaintiff lost the amount thereof, etc. The defendant answered that at the time of the sale and endorsement of the note by him to plaintiff, he informed the plaintiff of each and every defect therein, etc. The plaintiff moved for an order requiring the defendant to make his answer specific; that he state in what manner he informed the plaintiff of the defects in said note, and of the defenses thereto, and for a further order requiring him to separate his second paragraph, and show what portion thereof is relied upon as a defense, and what portion is intended as affirmative relief, set-off, or counter claim against the plaintiff; which motion was overruled; *held*, not reversible error.

2. **Trial:** CROSS-EXAMINATION. *Held*, That when a party on cross-examination asks a witness an immaterial or irrelevant question, he is concluded by the answer, and will not be permitted to call a witness to contradict it.

3. ——: FAILURE TO READ INSTRUCTIONS TO JURY. The statute provides that the court must read over all instructions which it intends to give, and none others, to the jury, etc. *Held*, That the refusal or failure by the court to read to the jury an instruction which it announces as given, and writes thereon as given, and files as such, is reversible error.

ERROR to the district court for Webster county. Tried below before GASLIN, J.

*G. R. Chaney*, and *C. E. Davis*, for plaintiff in error.

*Case & McNeny*, for defendant in error.

COBB, J.

This cause is brought on error from the district court of Webster county.

The plaintiff in his petition alleges that on June 1, 1886, he purchased of the defendant, for the consideration of $650, a promissory note, here set out.

"$700.          RED CLOUD, NEB., April 27, 1885.

"One year after date we or either of us promise to pay to Matthew R. Bentley, or order, seven hundred dollars for value received, negotiable and payable without defalcation or discount at Red Cloud, Neb., with interest at the rate of ten per cent per annum from date until paid. In case this note is not paid at maturity, and an action is commenced thereon, we agree to pay an attorney's fee of ten per cent on the amount due, the same to be allowed by the court and included in the judgment.

"Due April 27, 1886.          ·JOSHUA BRUBAKER
                              "SARAH R. BRUBAKER.

"May 15, 1886, received on the within note, $120."

Endorsed, "without recourse, M. R. Bentley."

That the defendant delivered the same to the plaintiff as a valid obligation, when in fact all of said note, except the sum of $7.75, was usurious, contracted for by defendant with one of the makers, Joshua Brubaker, and which the defendant knew was only good for $7.75 at the time he sold the same to the plaintiff; that plaintiff notified the makers and requested them to pay the note, which they refused to do, but tendered the sum of $22 in payment, which plaintiff refused to accept, and on March 27, 1887, brought suit thereon in the county court of said county against the makers, who kept their tender good, and on April 7, following, a trial was had and judgment was recovered for $7.75 only against the makers, and against the plaintiff for $3 for cost of suit; that the plaintiff expended

$25 as attorney's fees in endeavoring to collect the note, which was secured by both real estate and chattel mortgages, and which would have been worth its face, with interest, less the credit of $120, had it not been usurious; that after the makers had joined issue on a plea of usury the plaintiff notified the defendant, at the Hot Springs of Arkansas, of the · defense set up, requesting that his testimony be taken to meet the plea of usury if he so desired, to which request the defendant paid no attention; wherefore the plaintiff prays judgment for the amount of money paid and expended, with interest at ten per cent from May 15, 1886, on the consideration paid for the note.

I. The defendant answered that at the time of the endorsement and delivery of the note set forth, he informed the plaintiff, who was fully apprised of each and every defect therein and defense thereto, and took and received the note with full knowledge of its character, kind, and quality, and at his own risk, and without any warranty, implied or otherwise, on the part of defendant; and denied all allegations not specifically admitted.

II. The defendant further says that the note, with others belonging to him, was endorsed and delivered to plaintiff to the amount of $1,883 in exchange for the N. W. $\frac{1}{4}$ of sec. 35, town 1, R. 11 in Smith county, Kansas, mortgaged for $300, assumed by defendant, and falsely represented by the plaintiff to be land of good quality, free of breaks and smooth, with forty acres under cultivation, worth $2,500, the plaintiff well knowing such were not the facts, and that it was rough broken land with little or none of it under cultivation, and was worth not more than $1,000. Relying upon the representations of the plaintiff as to the condition and value of said land, the defendant exchanged said notes, including the note set forth, for said land, and enclosed and delivered them to the plaintiff and assumed the payment of the $300 mortgage on the land. At the time of such exchange the land was in a condition adverse

and contrary to the plaintiff's representations and warranty, and was not worth more than $1,000, wherefore the defendant asks judgment against the plaintiff in damages for the sum of $1,483 and cost of suit.

The plaintiff's motion for an order requiring the defendant to make the first paragraph of his answer more specific; that he state in what *manner* he informed the plaintiff of the defects in said note, and the defenses thereto, and what particular defects and defenses were made known to him by defendant, and in what manner the defendant was relieved from his warranty in the sale of said notes; and for a further order requiring him to separate his second paragraph so as to show what portion thereof is relied upon as a defense to the plaintiff's cause of action, and what portion is intended as affirmative relief, set-off, or counter claim against the plaintiff, was argued by counsel, and was overruled by the court, to which ruling the plaintiff took exceptions in due form.

The plaintiff's reply admits that he exchanged the land described with the defendant for various notes, in various amounts, in all about $2,250, and denies each and every other allegation of the defendant's answer.

There was a trial to a jury with a finding for the defendant, and also special findings of fact that at the time of the delivery of the note in question, or prior thereto, the plaintiff was informed by the defendant that said note was usurious; and that the plaintiff fraudulently represented the value of the land he traded for the notes to the defendant.

The plaintiff's motion to set aside the verdict and for a new trial was overruled, with judgment for defendant's costs, to which exceptions were taken, and the following errors assigned:

1. The court erred in overruling the motion to make the first paragraph of defendant's answer more specific, and to separate his second paragraph, as asked for in the motion.

2. In excluding the testimony of Shirey, on recall, and

excluding the answer to the last question asked defendant on cross-examination.

3. In giving instructions one and three, and the latter clause of instruction two of its own motion.

4. In marking the instructions one and two, asked for by plaintiff, "*given*," and handing them to the jury without reading them to the jury with the other instructions.

5. In submitting the special findings to the jury, because there were no sufficient pleadings or evidence upon which to base them.

6. In overruling the motion for a new trial.

As to the first error here assigned, my understanding of the law to be applied to this class of motions is, that unless the motion can be allowed in the exact form presented to the court it will be denied.    This motion first requires the defendant to make the first paragraph of his answer more specific, and to state in what *manner* he informed the plaintiff of the defects of the note transferred and of the defenses thereto.

It does not appear to be important to disclose in what manner this information was conveyed.    The plaintiff's cause of action, if he had one, consisted in the fact that he bought the note of defendant in good faith, believing it to be a binding obligation on the makers, unaffected by usury, and that it turned out in fact, coming to his knowledge after the purchase, and parting with the consideration therefor, that it was affected with the vice of usury.    Now if the defendant had informed him before the purchase and delivery that the note was usurious, either personally or by another, directly or indirectly, orally or in writing, that would make him a purchaser with notice of the defect. Had the motion been limited to a rule requiring the defendant to state in his answer, definitely, that he informed the plaintiff, before the purchase and delivery of the note, of the identical defect charged against the note in the plaintiff's petition, I would be inclined to hold that the

motion should have been allowed, although not aware that it has been held in this state to be a reversible error on the part of a trial court to refuse to compel parties in an action to make their pleadings definite and certain. I am far from certain, however, that the first paragraph of the defendant's answer was not open to demurrer for not meeting the issue as tendered by the petition.

The motion also asked for an order requiring the defendant to separate the second paragraph of his answer, to show what portion he relied on as a defence to the action, and what portion he intended as a foundation for affirmative relief, set-off or counter claim. Under correct rules of pleading this portion of the answer should have been entitled counter claim, though I think there was no necessity of separating it into several parts. But taking the motion as a whole I am not prepared to say that the court below committed an abuse of its discretion in overruling it.

The second error is the exclusion of the testimony of the witness Shirey. It appears that when the defendant was on the stand as a witness in his own behalf, upon his cross-examination the following testimony was given:

Q. You have been selling off quite a number of notes?

A. Yes, sir.

Q. They were all about the same quality?

A. Well, Shirey thought not.

Q. Did you tell every man that you sold to that there was *bonus* in them?

A. Yes, sir.

Q. Tell Shirey so?

A. Yes, sir, and he knew it without my telling him so.

Q. Shirey had the first pick of the notes?

A. Yes, sir.

The defendant being afterwards recalled for further cross-examination, the counsel for plaintiff asked the question: At the time you sold that batch of notes you testi-

fied to selling to the Red Cloud National Bank did you tell Shirey that the notes contained usury or *bonus*, or say anything to lead him to believe they were usurious notes?

To this question the defense objected as immaterial, irrelevant, and improper cross-examination; calling for the witness' conclusions, and because the witness had been once examined and excused from further testimony. These objections the court sustained. R. V. Shirey, who had been previously examined as a witness, was recalled by the plaintiff, who offered to prove by the witness that the defendant did not, at the time he sold the notes referred to as having been sold to the Red Cloud National Bank, tell him that the notes contained bonus, or usury, or use any words that would lead him to believe that they were usurious notes.

The same objections, last made, were interposed by defense.

By the court: You may ask that question.

Q. Did he tell you the notes were usurious, or that they contained *bonus?*

Objection was now sustained, and the plaintiff excepted to the ruling of the court.

The question whether the defendant told the president of the Red Cloud National Bank that certain notes were usurious, or not, was immaterial to the issues to be tried; and I understand the rule to be inflexible that where a party pursuing a cross-examination asks the witness an immaterial question, he is bound by the answer given, and will not be permitted to call a witness in contradiction. This rule is elementary, and does not require to be resolved.

The third and fourth errors will be considered together, and are founded upon the refusal of the court to read to the jury certain instructions asked to be given by the plaintiff, and marked *given* by the court, that "every person who transfers a chose in action impliedly warrants at

least that there is no legal defense to its collection arising out of his own connection with its origin; hence if you find from the evidence that the defendant traded the note described in the plaintiff's petition with other notes to plaintiff for a tract of land, and that it was put into the trade at $650, and that the defendant endorsed said note without recourse, and delivered it to the plaintiff, he thereby warranted it to be just what it purported to be, a binding obligation of the makers for its full face, less the amount endorsed thereon; and if you further find that said note was all usurious except $7.75, you should find for the plaintiff."

2. "The vendor of a bill or note, notwithstanding he transfers the same by an endorsement without recourse, impliedly warrants by the very act of transferring that the prior signatures to the paper are genuine and, so far at least as affected by his dealings with and relation to the paper, that it expressed upon its face the exact legal obligation of all such prior parties."

The statute of this state, entitled Instructions to Juries, sec. 54, chap. 19, provides that "The court must read over all the instructions which it intends to give, and none others, to the jury, and must announce them as given, and shall announce as refused, without reading to the jury, all those which are refused, and must write the word 'given' or 'refused,' as the case may be, on the margin of each instruction."

From the language of this section it is clear that it was the intention of the legislature to make it the duty of the trial court to read to the jury all instructions given to them on the trial of a cause; or in other words, to make the method of giving instructions that of reading them to the jury. The statute not only imposes upon the court the duty of reading the instructions to the jury, but insures to every suitor the right to have all instructions which he shall present, and which shall be deemed proper to be given to the jury, read to them, at length, by the court.

A refusal or neglect to discharge this duty, and a denial of this right to a suitor, in any cause, are administrations without that "due process of law" required by the constitution of this state, and must be held to be reversible error.

The judgment of the court below is reversed, and the cause will be remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other Judges concur.