Draper v. Taylor.

debit item. The action having been commenced October 4, 1894, was not barred by the statute of limitations. The judgment is

AFFIRMED.

GEORGE E. DRAPER V. WILLIAM Z. TAYLOR ET AL.

FILED JUNE 21, 1899.   NO. 8933.

1. Quieting Title: PLEADING. In an action to quiet title to real estate the plaintiff may allege in his petition as many claims of ownership as he may have.

2. ———: COLOR OF TITLE: SOLDIER'S ADDITIONAL HOMESTEAD. A person who has purchased a soldier's "additional homestead right" and has, under proper powers of attorney, located the same and entered into possession of the land upon which the location was made, has color of title to the entire tract described in the receiver's receipt.

3. Ruling on Motion. It is not error to deny a motion which cannot be allowed *in toto*.

4. New Trial: AFFIDAVIT: NEWLY-DISCOVERED EVIDENCE. A motion for a new trial on the ground of newly-discovered evidence should ordinarily be supported by the affidavit of the party making the application, as well as by the affidavit of his attorney.

5. ———: ———: ———. The affidavit of the new witness should also be produced or its absence satisfactorily accounted for.

6. Impeaching Evidence: FOUNDATION. It is not error to reject impeaching evidence, where no proper foundation has been laid therefor.

7. Possession of Land. Possession of land is notice to the world of the possessor's rights therein.

8. Quieting Title: DECREE FOR PLAINTIFF. Evidence examined, and *held* to sustain the finding and judgment.

ERROR from the district court of Hitchcock county. Tried below before WELTY, J.  *Affirmed.*

*L. H. Blackledge* and *W. S. Morlan*, for plaintiff in error.

*William O. Woolman, contra.*

SULLIVAN, J.

William Williams, who had been a private soldier in the civil war, took up a homestead of 120 acres in the state of Arkansas and occupied the same until 1887, when he exchanged it for other lands. In 1878 he sold his "additional homestead right" to Gilmore & Thomas, of the city of Washington, for a consideration of $50 and executed irrevocable powers of attorney authorizing them to locate the scrip and empowering them to substitute the name of the person who should by assignment of the right become entitled to receive the final receipt and patent for the land located. William M. Everetts, acting for Taylor, the plaintiff herein, purchased the right of Williams from Gilmore & Thomas, and in May, 1878, located the scrip in Hitchcock county near the village of Culbertson. After doing so he delivered the powers of attorney and receiver's receipt to Taylor, who took immediate possession of the land and occupied it in connection with his adjoining homestead. The first year he plowed several acres and planted it to corn. He also plowed several furrows along two sides of the tract to serve as a fire-guard. The next year and for several years thereafter he tried to crop a portion of the land, but the crops seem to have been complete failures. The greater portion of the land was used for pasturage, and sometimes range cattle and town cows mixed with Taylor's cattle and grazed upon this and other lands in the vicinity. It was generally known in the neighborhood that Taylor was occupying the premises under a claim of ownership. Taylor lived in Culbertson. In 1882 his residence was burned and all his valuable papers, including his muniments of title, were lost in the fire. In the same year one Joe Hunter went upon the land in question with a load of timbers and commenced to build a "dug-out," but upon being informed by Taylor that the property was his, he abandoned his purpose and moved off. The land was taxed by the county authorities, and from 1878 to

1887, with the exception of one year, Taylor paid the taxes. It seems that in 1884 the land was sold for the non-payment of the taxes of 1883. Taylor was the purchaser at the tax sale, and in 1886 obtained from the county treasurer a tax deed in the usual form, but which, in consequence of a mistake, did not correctly describe the premises. Taylor's object in allowing the taxes to become delinquent for 1883 was to obtain a tax deed and thus repair the loss sustained by the destruction of his title papers. By reason of the misdescription in the tax deed it was not recorded, and Taylor, according to his testimony, never claimed any right or title under it. March 20, 1884, the patent, which was issued in the name of Williams, was forwarded to Taylor, who caused it to be recorded in the office of the county clerk on October 28, 1886. A. D. King located in Culbertson in December, 1885, and soon after became acquainted with Taylor, who proposed to sell him the forty-acre tract. King testified that Taylor based his claim of ownership on a tax title. This Taylor emphatically denies, and his account of the matter is probably correct, as the defective tax deed had not been issued at the time the negotiations for a sale of the land were pending. The taxes for the year 1888 became delinquent, and the land was sold at private tax sale to King, who afterwards paid the taxes charged against it for the years 1889, 1890, 1891, and 1892. December 14, 1891, a tax deed was issued to King and was recorded on the same day. In 1888 Taylor leased a portion of the land for a brick yard and probably renewed the lease for the following year. Fred D. Pitney discovered the defect in Taylor's title and through his brother-in-law, an attorney named Boyle, obtained from Williams, without consideration, a quitclaim deed to the land. This deed was executed by Williams under the impression that Pitney was the owner of the land located under the scrip which he sold to Gilmore & Thomas. The deed to Pitney was recorded in November, 1888. Afterwards Pitney and wife conveyed the land to

Boyle, who reconveyed it, by deed containing a special warranty, to Mrs. Pitney. After these deeds were recorded the Pitneys executed a mortgage on this and other lands to J. W. Dolan, as trustee, to secure an indebtedness of $1,300 due to the Hitchcock County Bank, of which King was president. This mortgage was afterwards purchased by George E. Draper, a director of the bank. In 1892 Draper obtained a decree foreclosing the mortgage in an action to which Taylor was not a party. To prevent the decree from being executed by a sale of the forty-acre tract and to quiet his title and possession Taylor brought this action and obtained in the district court the relief demanded. Draper by this proceeding in error brings the record here for review.

Taylor, in his petition, bases his claim of ownership on (1) adverse possession, and (2) the transfer to him of the rights of William Williams as the original owner of the scrip under which the land was located. The objection to the form of the pleading being raised for the first time in this court is not entitled to be considered. But if the question were properly before us for decision, we would be compelled, on the authority of *Gregory v. Langdon*, 11 Neb. 166, to resolve it in favor of the plaintiff.

It is claimed that the court erred in refusing to sustain a joint motion made by King and Draper to set aside the submission of the cause and for leave to introduce additional testimony. The motion was made more than six months after the cause was submitted. King had already before the court sufficient evidence to entitle him to a decree for the taxes which he had paid. This relief he afterwards obtained, and it was the only relief to which he would have been entitled if his application had been sustained. Clearly then the court did not err in denying the motion. If a motion is not good in the form in which it is presented, it is not error to overrule it. (*Hudelson v. First Nat. Bank of Tobias*, 56 Neb. 247, 76 N. W. Rep. 570.) But aside from this technical reason for sustaining the ruling, we think it was an entirely just and proper exercise of judicial discretion.

Immediately after the court announced its findings and rendered its decree Draper and King, each for him-self, filed a motion for a new trial based in part on a claim of newly-discovered evidence. Each motion was supported by the affidavit of the attorney representing the parties and was in substance the same as the affidavit previously filed in support of the motion to re-open the cause. Both motions were overruled, and Draper assigns this action of the court for error. His contention is that he made a showing of newly-discovered evidence which ought to have procured for him a new trial of the issue. Without deciding whether there was a sufficient showing of diligence, and without discussing the character of the new evidence and its probable influence as a factor in another trial, we think the district court made no mistake in refusing to vacate its decree. It is our understanding of the rule that not only must counsel not have known of the evidence upon which the application is based, but the applicant himself must have been ignorant of its existence. To be sure the affidavit states that "neither defendants nor their counsel, by reason of the nature of the evidence, * * * were able sooner to discover said evidence," and "because knowledge of the existence thereof could be but very indefinitely known to any of the parties to the action except the plaintiff." No affidavit was filed by Draper or King, and how their attorney could know that they were ignorant of the facts set out in his affidavit is something we are not quite able to comprehend. At best his statement in regard to the matter is the merest hearsay. (14 Ency. Pl. & Pr. 823; Hilliard, New Trials [2d ed.] 499; *State v. Kellerman,* 14 Kan. 135; *Broat v. Moor,* 44 Minn. 468; *State v. Campbell,* 115 Mo. 391.) There should also have been presented in support of the motion the affidavit of the new witness stating the facts to which he would testify, or there should have been a satisfactory reason given for not obtaining such affidavit. (*Hand v. Langland,* 67 Ia. 185; *Quinn v. State,* 123 Ind. 59; *McLeod v. Shelly Mfg. Co.,* 108 Ala. 81; 14 Ency. Pl. & Pr. 825.)

For the purpose of impeaching Fred D. Pitney, who testified for plaintiff, the defendants offered in evidence the deposition of the witness taken in the foreclosure case. The offer was rejected, and of this ruling Draper complains. The attention of the witness had not been directed to the matters contained in the deposition. No opportunity had been given him to explain, and, therefore, the evidence was properly excluded. (*Hanscom v. Burmood*, 35 Neb. 504; *Wood River Bank v. Kelley*, 29 Neb. 590; 3 Jones, Evidence secs. 848, 849.)

The theory of the defense that Taylor's possession was not continuous, exclusive, and adverse as to all of the land is supported by some evidence, as is also the claim that he had not succeeded to the equitable rights of William Williams; but we think the finding of the trial court is clearly the only one warranted by the evidence in the record. Taylor's possession of the land was notice to the world of the extent and character of his interest therein. Pitney acquired nothing more than the naked legal title. This was all he pledged to the bank, and it was all the bank assigned to Draper. The judgment is

AFFIRMED.