# A. Brockmeyer v. Sanitary District of Chicago.

## Gen. No. 11,623.

1. DEMURRER—*when reversal of order sustaining, will be made.* An order sustaining a demurrer will be reversed if any count of the declaration demurred to is held sufficient in law.

2. COVENANT—*who may maintain action for breach of.* A tenant of a grantor in a deed to land by which the grantee assumes, among other things, an obligation to construct and maintain a levee and ditch, may maintain an action against such grantee for a breach thereof.

3. COVENANT—*what not essential to right of assignee of land to maintain action for breach of.* It is not necessary that the word " assigns," or other equivalent word, should be used in the covenant, in order to entitle an assignee of the land, for the benefit of which the covenant is made, to maintain an action in his own name for breach of the covenant.

4. CONTRACT—*how to be interpreted.* In interpreting a contract, the thing to be ascertained is the intention of the parties, and the court, in endeavoring to ascertain such intention, will place itself as nearly as possible in the situation of the parties and in possession of their knowledge of the circumstances under which the contract was made, and for this purpose will, when necessary, call to its aid evidence *de hors* the contract.

5. PAROL EVIDENCE—*when, competent in aid of interpretation of contract.* Parol evidence is sometimes competent to enable the court to place itself in the position of the parties at the time of the making of a contract for the purpose of ascertaining their true intention.

Action of covenant. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1904. Reversed and remanded. Opinion filed December 15, 1904. Rehearing denied January 26, 1905.

**Statement by the Court.** Appellant was plaintiff and appellee defendant in the trial court, and will be so referred to here. Plaintiff filed a declaration consisting of three counts. The defendant demurred generally to the declaration and each count thereof, and the court sustained the demurrer to the entire declaration and gave judgment for the defendant, from which judgment this appeal is taken.

If any count in the declaration is sufficient in law, the judgment must be reversed, otherwise not.

In the first count a warranty deed is set out in full from
Mary A. Prescott McArthur to the Sanitary District of
Chicago, conveying to said district the following described
premises, situate in Cook county, Illinois:

" All of that part of the northwest quarter ($\frac{1}{4}$) of section
twelve (12), township thirty-eight (38) north, range twelve
(12) east of the third principal meridan, lying north of the
northerly boundary line of the right of way of the Chi-
cago, Santa Fe & California Railway Company, and east
of a straight line drawn 200 feet west of and parallel with
the east line of said quarter section.   Also all that part of
the northeast quarter ($\frac{1}{4}$) of section twelve (12), township
thirty-eight (38) north, range twelve (12) east of the third
principal meridian, lying west of the center thread of the
Desplaines river and north of the northerly line of the
right of way of the Chicago, Sante Fe & California Rail-
way Company."

The deed contains the following :

" It is understood and agreed by and between the parties
hereto, and it is a part of the consideration herein, that the
grantee shall erect and continuously maintain a levee ex-
tending from the high ground upon section fourteen in said
township thirty-eight (38), to the high ground in section
one (1) in said township; said levee to be north of and par-
allel to the new river channel, which the grantee is about
to construct in said township; said levee to be twenty (20)
feet wide on the top, with slopes of one and one-half ($1\frac{1}{2}$)
to one (1) on the outside, and two (2) to one (1) on the
inside; its grade to be twenty (20) feet above datum at its
lower end, and rise with a uniform grade to the Chicago,
Santa Fe & California Railway, where its elevation is to be
twenty-four (24) feet above datum; thence it is to rise to a
height of twenty-five (25) feet above datum at its upper end;
on that side of said levee farthest from the river, said grantee
shall cut and continuously maintain a ditch three (3) feet
deep and six (6) feet wide on the bottom, with slopes of one
and one-half ($1\frac{1}{2}$) to one (1); said levee and said ditch shall
be located on the land hereby conveyed.   This conveyance
is subject, however, to the right of said grantor, her heirs,
executors, administrators and assigns, to lay and continu-
ously maintain an iron pipe not exceeding six (6) inches in
diameter, under, through or over the land herein conveyed,
from the Desplaines river to her remaining land in said
northwest quarter ($\frac{1}{4}$) of said section twelve (12) for the

purpose of procuring a water supply to her said land, the same to be done at her or their expense, and in such manner as not to damage said levee or ditch, and to be done under the direction of the chief engineer of the grantee; but this shall not be construed as an obligation on the part of said grantee to maintain water in said Desplaines river; and said grantee shall not be estopped by anything herein, from changing the course of said river, or interfering with, controlling and restraining the flow of the waters of said river.

It is also understood and agreed by and between the parties hereto, and it is a part of the consideration for this deed, that said grantee, its successors and assigns, shall provide and continuously maintain, from the time when its main channel shall have been completed, such an outlet or drain from said ditch as will carry all the water from said ditch into said main channel."

The third count is as follows :

" Whereas, also, on or about the first day of April, A. D. 1893, the said Mary A. Prescott McArthur, by deed, duly signed, sealed and delivered, to-wit, the deed in the first count hereinbefore set forth, conveyed to the said defendant a large tract of land, to-wit: the tract of land in the said deed described; which said tract of land said defendant accepted, and entered into possession thereof, and occupied and used the same, and has continued to occupy and use the same ever since the conveyance.   Said tract of land in said deed described, was purchased by said defendant for the purpose and benefit of the public water-ways, known as the drainage canal and Desplaines river, which said defendant was duly authorized to construct and maintain, and duly authorized by law to purchase said tract of land for the benefit of said 'drainage canal' and Desplaines river.   And by which said deed said defendant covenanted and undertook to build a levee and ditch from the high ground in section 14 to high ground in section 1, township 38 north, range 12, east of the third principal meridian, County of Cook and State of Illinois.   That said levee and ditch were intended to protect, and would protect said land, at the time of said conveyance owned and still owned by said Mary A. Prescott McArthur, and consisting of a farm of 100 acres, lying along the north line of said proposed levee and ditch, from overflow, and protect the same from being flooded by water from said Desplaines river and 'drainage canal,' and other sources in

the vicinity of said land.  That said plaintiff, during the
entire year 1902, and for a long time prior thereto, was and
still is tenant of said land so owned by said Mary A. Prescott
McArthur, said land consisting of a farm of about 100 acres
so lying along the north line of said proposed levee and
ditch, and situated in said sections 11 and 12 as aforesaid,
and as such tenant, during said year 1902, and for a long
time prior thereto, said plaintiff had a right to have said
levee and ditch constructed and continuously maintained
by said defendant, during said entire year 1902, and for a
long time prior thereto, and said farm so in possession of
said plaintiff, protected from overflow.   Yet the said de-
fendant has neglected and refused to perform said covenants
in the said deed contained, and  has neglected and refused
to construct said levee and ditch and continuously main-
tain the same, and neglected and refused to protect the said
land from overflow, so owned by said  Mary A. Prescott
McArthur, consisting of  100  acres, farm as aforesaid, so in
possession of said plaintiff as tenant, and in his control; by
reason whereof fifty-two acres of said farm was, during the
year 1902, flooded and overflowed by large quantities of
water coming in from said  Desplaines river and drainage
canal, and other sources; by reason whereof said plaintiff
lost fifty-two acres of hay, oats, pasture and other grains
belonging to said plaintiff, and growing on said farm during
said year 1902, and the loss of a large amount of labor,
expended by him in and about sowing and tending said
crops, and the loss of the use of a large part of said fifty-
two acres of land during said year 1902, to which said
plaintiff was entitled, to the damage of said plaintiff of
$504.25.   That if said defendant had performed its said
covenants and undertakings and constructed said levee and
ditch, prior to said year 1902, and continuously maintained
the same during said year 1902, said land so in possession
of the said plaintiff, would not have been overflowed, and
the crop growing thereon during said year 1902 would not
have been destroyed; by reason whereof the said defendant
became and was liable to pay the said plaintiff the said sums
of money, damage as aforesaid, and being so liable, said
defendant afterwards, to-wit, on said twentieth day of Feb-
ruary, 1903, promised to pay said plaintiff said several sums
of money, when thereunto requested. And the said plaintiff
avers that he made demand in writing on said defendant on
said twentieth day of February, 1903, for the payment of
said sums of money, damages aforesaid, and  gave to the

Brockmeyer v. Sanitary District of Chicago.

said defendant all information necessary to fully inform the said defendant of the said damage and the cause thereof. And the said plaintiff avers that he is entitled to a reasonable attorney's fee to be taxed as costs by the court, in addition to said damages."

JOHN N. SWARTS, for appellant.

SEYMOUR JONES, D. W. SULLIVAN, JAMES TODD and EDDY, HALEY & WETTEN, for appellee; P. C. HALEY and CHARLES H. PEGLER, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee's counsel make the following objections to the declaration:

First. The declaration does not allege that the main channel had been completed. This objection is based on the words in the deed, " that said grantee, its successors and assigns shall provide and continuously maintain, from the time when its main channel shall have been completed, such an outlet or drain from said ditch as will carry all the water from said ditch into said main channel." Whether or not this objection is good as to the first and second counts, or either of them, it is unnecessary to decide; because, manifestly, it has no application to the third count, which refers only to the levee and ditch, and avers that the defendant has neglected and refused to construct the levee and ditch, and continuously to maintain the same, and that, if it had constructed said levee and ditch prior to the year 1902, and had continuously maintained the same during said year, the damage complained of would not have occurred. The non-construction of the levee and ditch is solely counted on in the third count as the cause of the damage averred, and the proposed drain from the ditch to the main channel is not alleged to be any cause of the damage, or even mentioned.

The second objection of appellee's counsel is that the plaintiff, a mere lessee, and not a party to the deed, cannot sue in respect to a breach of duty under the deed. It is averred in the third count that Mary A. Prescott McArthur,

defendant's grantor, is the owner of 100 acres of land lying along the north line of said proposed levee and ditch, and that the plaintiff, during the year 1902, and for a long time prior thereto, was, and still is, the tenant of said land. The deed, also, contains a recital to the effect that Mary A. Prescott McArthur is the owner of certain land in the northwest quarter of said section 12, remaining after the conveyance by her to the defendant of the land in said section 12 first described in the deed. In Fitch v. Johnson, 104 Ill. 111, the following facts appeared: The Lyndon Hydraulic Manufacturing Company was the owner of certain real estate, at or near Lyndon, in Whiteside county, on each side of and extending across Rock river. There were in course of construction a dam across the river, a head-race, and other hydraulic works connected therewith, designed to be used in operating a flour mill then being built on part of the company's premises on the north side of the river. The Hydraulic Company, May 1, 1873, conveyed the mill and the land on which it was situated, together with a water power equal to 2500 inches of water under a six feet head, to Bradford C. Church and Samuel Patterson. The deed of conveyance contained the following covenants:

" The party of the first part hereby covenants and agrees that it will complete and finish its dam and works in a good and substantial manner, according to the contract between the party of the first part and the original contractor, David B. Sears, and that it will forever keep up and maintain at least a six feet dam, and all necessary piers, races, bulkheads and gates, so as to enable the party of the second part, their heirs and assigns, to fully use and enjoy the water power herein above granted at all times, unless prevented by some unforeseen accident or casualty to the works of the party of the first part or its grantees. And the party of the first part further covenants and agrees, to and with the party of the second part, their heirs and assigns, that in case of any damage being done to the works of the party of the first part by force of the water or ice, or from any other cause, it will, without unreasonable delay, cause the same to be repaired; and in case the party of the first part shall fail or neglect to so make any such necessary re-

pairs for a period of thirty days after the same might have
been done, that then and in that case the party of the sec-
ond part, or their heirs or assigns, shall have the right,
after having given to the party of the first part ten days'
notice in writing, to enter upon the works of the party of
the first part and make such necessary or reasonably nec-
essary repairs upon the same, so as to enable the party of
the second part to enjoy the water power hereby granted,
or for the purpose of preventing further damage being
done to the works or property of the party of the second
part; and for the expenses incurred in so doing, the party
of the first part shall be liable in a suit at law for the
amount so expended by the party of the second part, less
the party of the second part's proportion of such expenses
as hereinafter covenanted and agreed to be paid by them."

September 19, 1874, the Hydraulic Company conveyed to
one Potter the dam and the other hydraulic works, together
with the land on which they were situated, and Potter,
January 17, 1870, conveyed the same to Fitch and Brooks,
and Fitch, subsequently, conveyed all his interests to his
son, Frank E. Fitch. Church and Patterson, April 15,
1875, conveyed to Johnson, the appellee in the cause, the
flour mill and the land on which it was, including the
water power, and all rights and interests purchased by
them from the company. Johnson, the assignee or grantee
of Church and Patterson, sued Fitch and Brooks, who were
also assignees of Church and Patterson, by mesne convey-
ances, for a breach of the covenant of Church and Patter-
son. It was objected that the covenant was a personal
one, and did not run with the land, and, therefore, John-
son, the assignee of Church and Patterson, could not sue
on it, but the court held the contrary and affirmed the
judgment in favor of Johnson, citing Sterling Hydraulic
Co. v. Williams et al., 66 Ill. 393; Batavia Mfg. Co. v. New-
ton Wagon Co., 91 Ill. 230, and Wiggins Ferry Co. v. Ohio
& Miss. Ry. Co., 94 Ill. 83. In Wiggins Ferry Co. v. O. &
M. Ry. Co., *supra*, the court (p. 92) quote with approval the
following language from Rawle on Covenants: "But, on
the other hand, if the covenant were one intended to ben-
efit the land, it was held to be incident to it, even if made

by a stranger, and, therefore, whoever might become the owner of the land would also be entitled to the benefit of the covenant."

In L. & N. R. R. Co. v. Ill. Cen. R. R. Co., 174 Ill. 448, 453, the court say: "All covenants which relate to land and are for its benefit run with it, and may be enforced by each successive assignee into whose hands it may run by conveyance or assignment." See, also, Lydick v. B. & O. R. R. Co., 17 W. Va. 427; Lake Erie & W. R. R. Co. v. Powers, 15 Ind. App. 179; Midland Ry. Co. v. Fisher, 125 Ind. 19; Conduitt v. Ross, 102 Ind. 166. In the last case the court uses this language: "When an instrument conveys or grants an interest or right in land, and at the same time contains a covenant in which a right attached to the estate or interest granted is reserved, or when the grantee covenants that he will do some act on the estate, or interest granted which will be beneficial to the grantor either as respects his remaining interest in the lands out of which an interest is granted, or lands adjacent thereto, such covenant is one which may become annexed to and run with the land and bind its owners successively. When such grant is made and contains a covenant so expressed as to show that it was reasonably the intent that it should be continuing, it will be construed as a covenant running with the land. A covenant which may run with the land must have relation to the interest or estate granted, and that the act to be done must concern the interest created or conveyed."

In Lydick v. B. & O. R. R. Co., *supra*, the court (p. 440) say: "So a covenant by the grantee of one parcel of land, for the benefit of other adjacent land of the grantor, will pass to a subsequent grantee of the latter tract, and may be enforced by him against the original covenantor."

It is not necessary that the word assigns, or other equivalent word, should be used in the covenant, in order to entitle an assignee of the land, for the benefit of which the covenant is, to maintain an action in his own name for breach of the covenant. Pittsburgh, Ft. W. & C. R. R. Co. v. Reno, 22 Ill. App. 470, 477; Bally v. Wells, 3 Wil-

son, 25, 29; Platt on Covenants, 65. In the case in 3 Wilson, the court (p. 29) say, among other things: "There must always be a privity between the plaintiff and defendant to make the defendant liable to an action of covenant; the covenant must respect the thing granted or demised; when the thing done, or omitted to be done, concerns the land or estate, that is the medium which creates the privity between the plaintiff and the defendant." In the present case the plaintiff is assignee of the land for the benefit of which the covenant was made, and, therefore, a privy in estate. Coan v. Osgood, 15 Barb. 583, 588. The plaintiff, being lessee of the land, is an assignee, within the meaning of the law.

In Ball v. Chadwick, 46 Ill. 28, 31, the court say: " Bouvier defines assignees to be 'Those to whom rights have been transmitted, by particular title, such as sale, gift, legacy, transfer or cession.' Of the word assignment he says: ' In common parlance this word signifies the transfer of all kinds of property, real, personal and mixed, and whether the same be in possession, or in action, as a general assignment. In a more technical sense, it is usually applied to the transfer of a term of years; but it is more particularly used to signify a transfer of some particular estate or interest in land.' There is no doubt, that the popular meaning of the word as here defined, would embrace a lease for a term of years. Nor can we see why it does not fall within the last clause of the definition. A term for twenty years being unquestionably an estate or interest in lands. Lord Coke says : ' Estate signifies such inheritance, freehold, term of years, tenancy by statute merchant, staple, elegit, or the like, as any man hath in lands or tenements,' etc. Co. Lit., secs. 650, 345a. This term would, therefore, seem to come clearly within the definition, and hence to be embraced in the statute. Or, more accurately, that tenants for a term of years are assigns."

In Lake Erie & W. R. R. Co. v. Powers, 15 Ind. App. 179, the plaintiff was a tenant of the land to which the covenant related. The defendant had broken its covenant

with the plaintiff's landlord to build and forever maintain a fence along its right of way, by reason of which the plaintiff's crops were destroyed. It was contended, as in this case, that the plaintiff, not being a party to the deed from his landlord to the defendant company, could not maintain an action, but the court held the contrary, saying: "The lease under which appellee holds the farm is, both in contemplation of law and in fact, a conveyance of the premises to him as tenant, from year to year. The covenant of appellant runs with the land; and in our opinion the appellee, as assignee thereof, is entitled to recover in this action for the breach of the covenant to the extent that he has been damaged by reason of the failure of appellant to maintain the fence. * * * The agreement to maintain the fence is, as we have seen, a covenant running with the land. This covenant is in the special interest of the possessory title to the land. The appellee is the assignee of this title or interest. He was such owner when the breach occurred, and has sustained the damages by reason of the failure of the appellant to repair the fence. The landlord has no interest in the crops destroyed, and could maintain no action for such damages." In the case cited, as in this case, it was objected that the plaintiff being only a lessee, could not maintain an action on the covenant. The appellee has no right of action against his landlord.

Appellee's counsel say, in their argument: "There is nothing in the deed, when mentioning levee and ditch, reciting why they are to be built, or that they are to be built for the benefit of grantor's remaining land; in fact, his remaining land is only mentioned." It is mentioned in the deed, however, that the grantor has land in the northwest quarter of section 12, remaining after the conveyance by her to defendant of the land conveyed to it in that quarter section. This remaining land of the grantor being in the same quarter section in which the land conveyed to defendant is, must be adjacent, if not contiguous, to the latter, and, therefore, probably susceptible of being protected from overflow by a levee and ditch such as described in the deed.

In interpreting a contract, the thing to be ascertained is the intention of the parties, and the court, in endeavoring to ascertain such intention, will place itself as nearly as possible in the situation of the parties and in possession of their knowledge of the circumstances under which the contract was made, and for this purpose will, when necessary, call to its aid evidence *de hors* the contract. Thus, in Batavia Mfg. Co. v. Newton Wagon Co., 91 Ill. 230, 239, the court say: "What was the intention of the parties in using the language with reference to water power found in the deed of the Batavia Manufacturing Co. to Levi Newton? For if that intention can be ascertained, as well from the attendant circumstances, the situation of the parties and the state of the thing granted, as from the language employed in the deed, effect must be given to it."

The following cases are authority for the admission of parol evidence explanatory of the intention of the parties to a contract: Doyle v. Teas, 4 Scam. 202, 255; Barrett v. Stow, 15 Ill. 423; Hadden v. Shoutz, 15 Ill. 581; Sigsworth v. McIntyre, 18 Ill. 127, 128; Thomas v. Wiggers, 41 Ill. 470, 478–80; Kuecken v. Voltz, 110 Ill. 264, 269. See particularly Hadden v. Shoutz, *supra.*

The rule is a familiar one and is supported by numerous authorities. We are of opinion that the third count of the declaration is good on general demurrer, and that it was error to sustain the demurrer to the whole declaration. Therefore, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*